Jerry Dwight Stewart was convicted of first-degree robbery, see §13A-8-41, Ala. Code 1975, and was sentenced, pursuant to the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, to 20 years and 1 day in prison. The Court of Criminal Appeals affirmed his conviction and sentence in an unpublished memorandum. See Stewart v. State, (No. CR-00-2136, Feb. 22, 2002) 854 So.2d 1217 (Ala.Crim.App. 2002) (table). We affirm.
In April 1999, four men robbed Harry Sansom and James Hartley at gunpoint. Stewart was identified as a suspect in the robbery. An arrest warrant, in which an appearance bond in the amount of $25,000 was set, was issued for Stewart. Stewart was arrested in Portland, Oregon.
On July 30, 1999, after Stewart was extradited to Alabama, the Tuscaloosa District Court conducted Stewart's initial appearance pursuant to Rule 4.4, Ala.R.Crim.P. At the initial appearance, the court informed Stewart of the charges against him, of his right to representation by counsel, of his right to remain silent, and of his right to a preliminary hearing. During the initial appearance, Stewart completed an affidavit of substantial hardship. On the form, however, Stewart did not indicate that he was "financially unable to hire an attorney" and did not "request that the Court appoint one for [him]." The district court entered an order appointing an attorney from the public defender's office to represent Stewart. The district court also determined that the amount of Stewart's appearance bond — $25,000 — was proper. Stewart, however, was unable to post bail, and he remained incarcerated in the Tuscaloosa County jail.
Before Stewart's preliminary hearing, two officers interviewed Stewart at the jail. The officers, unaware that counsel had been appointed for Stewart on the day of the initial appearance, informed Stewart of hisMiranda[2] rights. Stewart did not request an attorney; he signed a waiver of his rights and talked with the officers. Stewart did not invoke his right to counsel at any time during the interview. Stewart provided the officers with a written confession.
Stewart was indicted and was charged with first-degree robbery. Before his trial, Stewart filed a motion to suppress his confession because, he said, his Sixth Amendment right to counsel was violated when the officers interviewed him without his counsel being present. Stewart argues that his initial appearance initiated adversarial proceedings against him and, consequently, he argues, his Sixth Amendment right to counsel attached at that time. The trial court denied Stewart's motion to *Page 903 
suppress and admitted his written confession into evidence. The Court of Criminal Appeals affirmed the judgment of the trial court, holding that Stewart's Sixth Amendment right to counsel had not attached before his interview with the officers because adversarial proceedings had not begun. We agree.
In Kirby v. Illinois, 406 U.S. 682, 689 (1972), the United States Supreme Court held that the right to counsel does not attach before the "initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." The Court explained why the Sixth Amendment right to counsel did not attach until the initiation of adversarial proceedings, stating:
 "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the `criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable."
Kirby, 406 U.S. at 689-90 (footnote omitted). The right to counsel attaches after adversarial proceedings are initiated because the "`core purpose' of the counsel guarantee is to assure and aid at trial, `when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.'" United States v. Gouveia,467 U.S. 180, 188-89 (1984) (quoting United States v. Ash, 413 U.S. 300,309 (1973)). The Court has further held that even when the Sixth Amendment right to counsel may have attached, it does not exist to protect the defendant at all post-attachment proceedings, unless the proceeding is considered a "critical stage." In United States v. Wade,388 U.S. 218, 224 (1967), the Court described a critical stage as a "pretrial proceeding where the results might well settle the accused's fate and reduce the trial to a mere formality." For example, the interrogation of a defendant, occurring after the attachment of the right to counsel, is a critical stage of the proceedings and the defendant is entitled to the assistance of counsel during the interrogation. Michiganv. Jackson, 475 U.S. 625, 629-30 (1986) ("The arraignment [under Michigan law] signals `the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment . . .; thereafter, government efforts to elicit information from the accused, including interrogation, represent `critical stages' at which the Sixth Amendment applies.").
Thus, the Sixth Amendment right to counsel is at issue only where adversary judicial criminal proceedings have been initiated against the defendant and where the defendant lacks assistance of counsel at a critical stage in the proceedings.
As previously noted, the initiation of formal proceedings may occur at the preliminary hearing, upon the filing of the indictment or information, or at arraignment. Kirby, 406 U.S. at 689. In Alabama, the initiation of adversary judicial proceedings for a felony prosecution begins with the issuance of an indictment. Ala. Const. 1901, Art. I, § 8. However, because the sole purpose of a preliminary *Page 904 
hearing is to determine whether there is sufficient evidence against the accused to present the case to the grand jury, the United States Supreme Court has held that a preliminary hearing constitutes a "critical stage" in the State's criminal process and that an accused has the right to counsel at that proceeding. Coleman v. Alabama, 399 U.S. 1, 8-10 (1970).
This Court, however, has not addressed whether an initial appearance conducted pursuant to Rule 4.4, Ala.R.Crim.P., constitutes a "critical" stage that might "settle the accused's fate and reduce the trial to a mere formality." Wade, 388 U.S. at 224. An initial appearance occurs only if the accused is not released from custody; it must be conducted within 72 hours after an arrest pursuant to a warrant. At the initial appearance, the court provides a defendant with information. The Committee Comments to Rule 4.4, Ala.R.Crim.P., state:
 "The purpose of Rule 4.4(a) is to insert the judicial process between the police and the defendant at the earliest practicable time in order to minimize the effects of carelessness, abuse of power, or unavoidable error in the police function. These rules dispense with the formality where the defendant has already been released. If he has not been released, however, Rule 4.4(a) insures procedural compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), as well as provides for the prompt determination of the conditions for release."
Thus, at the initial appearance, the court informs the defendant of the charges against him, of his right to representation by counsel, of his right to remain silent, and of his right to a preliminary hearing. No determination of fact with regard to the alleged offense or the defendant's fate is made at this stage. The defendant is merely informed of his constitutional rights. Although a defendant may complete an affidavit of substantial hardship seeking the appointment of counsel and counsel may be appointed, this fact alone does not elevate an initial appearance to a critical stage or trigger the Sixth Amendment right to counsel. Moran v. Burbine, 475 U.S. 412 (1986). See also the Committee Comments to Rule 4.4 ("It is neither intended nor expected that a determination of the defendant's right to appointed counsel would be made or counsel appointed at the initial appearance.").
Moreover, the fact that the court may determine or evaluate the conditions for release does not create an adversarial proceeding or a "critical stage." As the United States Supreme Court has stated, attachment of the Sixth Amendment right to counsel "becomes applicable only when the government's role shifts from investigation to accusation."Moran, 475 U.S. at 430. The court's determination of the conditions of release at an initial appearance is not accusatory or adversarial; it is a shield by the judicial branch to ensure that a defendant's rights are being protected. Stewart relies heavily on the United States Supreme Court's holding in McNeil v. Wisconsin, 501 U.S. 171 (1991), to support his contention that an initial appearance constitutes an adversarial proceeding. In McNeil, the defendant was arrested in Nebraska pursuant to a Wisconsin arrest warrant. Upon the defendant's return to Wisconsin, an initial appearance was conducted at which the defendant's bail was set and a preliminary examination was scheduled. The defendant was represented by counsel at the initial *Page 905 
appearance. At a later time, the defendant made inculpatory statements regarding other crimes without his counsel being present. The Court concluded that the defendant's Sixth Amendment right to counsel was offense-specific and, consequently, that his constitutional rights were not violated when he made the statements. Justice Scalia, in dictum, observed: "It is undisputed, and we accept for purposes of the present case, that at the time petitioner provided the incriminating statements at issue, his Sixth Amendment right had attached and had been invoked with respect to the [Wisconsin] armed robbery, for which he had been formally charged." 501 U.S. at 175 (emphasis added). Scalia's observation appears to suggest that the Court's holding establishes that a defendant's right to counsel attaches at an initial appearance. However, Wisconsin state law establishes that the right to counsel attaches when the State files a criminal complaint or issues a warrant. Jones v. State,63 Wis.2d 97, 216 N.W.2d 224 (1974). Therefore, in McNeil the defendant's right to counsel attached at the issuance of the warrant in accordance with Wisconsin law — not because the United States Supreme Court concluded that the right to counsel attached at the initial appearance.
The Sixth Amendment right to counsel attaches only after the commencement of adverse judicial criminal proceedings against the defendant. Because an initial appearance is an informational proceeding designed to protect the rights of the accused and does not constitute a "critical" pretrial proceeding, the right to counsel does not attach at that time. Here, Stewart's right to counsel did not attach at the initial appearance; therefore, the trial court did not err in denying Stewart's motion to suppress his confession on this ground.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
Moore, C.J., and Brown, Harwood, and Woodall, JJ., concur.
Houston, Lyons, and Johnstone, JJ., dissent.
[2] Miranda v. Arizona, 384 U.S. 436 (1966).