846 A.2d 1020

**Donald A. FENNER**

v.

**STATE of Maryland.**

**No. 88, Sept. Term, 2003.**

Court of Appeals of Maryland.

April 12, 2004.

Peter F. Rose, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for petitioner.

Gary E. Bair, Solicitor Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

Donald A. Fenner, petitioner, was tried by a jury in the Circuit Court for Frederick County and was convicted of

**4**

distribution of cocaine and conspiracy to distribute cocaine. On May 9, 2002, the trial judge sentenced petitioner to twenty years of incarceration for the distribution of cocaine conviction and a concurrent sentence of twenty years for the conspiracy to distribute cocaine conviction.

Petitioner then filed an appeal to the Court of Special Appeals. In an unreported opinion, the Court of Special Appeals affirmed the trial court's rulings. Petitioner filed a Petition for a Writ of Certiorari to this Court and on December 11, 2003, we granted the petition. *Fenner v. State*, 378 Md. 613, 837 A.2d 925 (2003). In his brief, he presents two questions for our review:

"1. Whether inculpatory statements made at a bail review hearing by a defendant who is unrepresented by counsel and who is not given any *Miranda*[1] advisements are admissible against the defendant at trial.

"2. Whether the trial court's admission of a redacted version of the statement made at the bail hearing was error where the redaction rendered the statement vague and misleading." (Footnote added.)

We hold that, in the context of petitioner's bail review hearing, the requirements of *Miranda* did not apply because, although he was in custody at the time, petitioner cannot be said to have been "interrogated" within the meaning of *Miranda*. Thus, petitioner's inculpatory statement at the bail review hearing was properly admissible at trial.

We also hold that, because petitioner's bail review hearing was not a "critical stage" of the pretrial proceedings, *i.e.*, it was not an adversary judicial criminal proceeding, petitioner's Sixth Amendment right to provided counsel had not yet attached. Therefore, the trial court did not err in allowing into evidence his inculpatory statement, which was made at the bail review hearing when petitioner was unrepresented by counsel.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

We further hold that the redacted version of the inculpatory statement, as it was read to the jury, was not so vague and misleading as to have made its admittance a clear abuse of discretion by the trial court. It was unquestionably relevant and its probative value was not substantially outweighed by the danger of unfair prejudice.

## I. Facts

On January 9, 2001, officers with the Frederick Police Department arranged to have a confidential informant at the time, Brett Hann, make a controlled purchase of narcotics in a "targeted area," namely, the John Hanson Apartment Building. After being searched to make sure that he did not have any controlled dangerous substances in his possession, Hann was fitted with a body wire for the purpose of recording and informing the police of any drug transaction that might occur. The police also gave Hann drug-purchase money and recorded the serial numbers of that money.

Upon entering the "targeted area" at approximately 10:50 p.m., Hann first encountered John Walter King, whom Hann knew from prior drug related matters. King asked Hann what he was looking for and Hann replied that he wanted fifty dollars worth of crack cocaine. King asked Hann to give him the purchase money, but Hann declined to do so because the police had told Hann not to "front the money."

According to Hann, King then motioned for an individual, later identified as petitioner, to come over so that Hann could conduct a "face-to-face" deal. Petitioner did so but initially refused to engage in any kind of transaction until King "vouched for" Hann. After King vouched for Hann, petitioner asked Hann what he wanted. Hann again stated that he wanted fifty dollars worth of crack cocaine. Hann gave petitioner fifty dollars, and petitioner then gave Hann three pieces of crack cocaine. King took one of the pieces as payment for assisting in the deal. Following this exchange, Hann said "see you later," which was a prearranged code phrase used to alert the police that the transaction was complete. Petitioner was arrested at the scene. The officers

testified, variously, that they observed Hann, King and petitioner via binoculars and/or listened to the transaction via the body wire.

On January 10, 2001, the day after petitioner's arrest, and after his appearance before a District Court commissioner,[2] he appeared before the Honorable Frederick J. Bower of the District Court of Maryland, sitting in Frederick County for a bail review hearing.[3] At this hearing, petitioner was read a

---

2. Under Md.Code (1973, 1998 Repl.Vol., 2003 Supp.), § 2–607(c) of the Courts and Judicial Proceedings Article, the "duties" of a District Court commissioner are, in pertinent part:

"(c) *Duties.*—(1) A commissioner shall receive applications and determine probable cause for the issuance of charging documents.

(2) *A commissioner shall advise arrested persons of their constitutional rights,* set bond or commit persons to jail in default of bond or release them on personal recognizance if circumstances warrant. . . ." (Emphasis added.)

The "INITIAL APPEARANCE REPORT," which was filed on the morning of January 10, 2001, and signed by the District Court commissioner, provides the following:

I hereby certify that when the above named Defendant was brought before me for his initial appearance, I:

INFORMED Defendant of each offense with which he is charged and of the allowable penalties, including mandatory penalties, if any.

PROVIDED Defendant with a copy of the Charging Document since Defendant did not already have one.

REQUIRED Defendant to read the Notice of Advice of Right to Counsel.

ADVISED Defendant that if he appears for trial without a lawyer, the Court could determine that he has waived counsel and proceed to trial with Defendant unrepresented by a lawyer.

ADVISED Defendant that he is charged with a felony that is not within the jurisdiction of the District Court; that he has a right to have a preliminary hearing by a request made now or within ten days; that failure to make a timely request will result in waiver of such hearing.

Defendant requests preliminary hearing. It is scheduled for 02/08/2001 . . . ."

Petitioner's signature appears on the second page of this "**INITIAL APPEARANCE REPORT**," which is titled "**Receipt.**" Petitioner indicated (by checking a box) the following:

"I . . . had read to me the offense with which I am charged, the conditions of release, the penalty for violation of the conditions of release, the Notice of Advice of Right to Counsel, and I acknowledge receipt of a copy hereof."

3. Under Md. Rules 4–213(a) and 4–216(d) (2004), a District Court judge

statement concerning the charges that were pending against him and was told that his preliminary hearing had been scheduled for February 8, 2001. Judge Bower then asked petitioner the following question: "Is there anything you'd like to tell me about yourself, sir?" In response, the following exchange took place:

"[PETITIONER]: For all the yes, activities, I don't, I don't know what you're talking about over there. (Indiscernible.) I ain't gonna, I mean I gonna (indiscernible.) I can't get no help on that, you know, they try to give you help. That's all they going to do is call and put me in jail and (indiscernible). I ain't playing it with the big boy, know what I'm sayin'. (Indiscernible), Officer, what else is there for me to do? Whenever I get, whenever I get caught with a little charge they never catch a large amount of drugs on me so, according to the amount of (indiscernible) drug (indiscernible), you know what I'm saying, I mean (indiscernible) so I think like they just (indiscernible). Whenever they catch, they probably catch me with one or two pills, Your Honor, this is just for me to make ends meet, to make money for me to be able to get by. They never caught me that (indiscernible) amount of drugs on me. You know what I'm sayin'. I mean I'm not denying what happened but when they caught me, they didn't catch me with nothing but that $50.

THE COURT: Sir, you need to have a lawyer just as soon as you can. I'm going to leave the bond (indiscernible) to say I'll allow 10% to be paid to, for your release, okay, your preliminary hearing is February the 8th.

[PETITIONER]: Thank you sir."

Prior to trial, petitioner moved to suppress the statements he made during the bail review hearing in the District Court. At the suppression hearing before the Honorable John H. Tisdale of the Circuit Court for Frederick County, he argued that the statements should not be admitted at trial because they were made pursuant to a custodial interrogation without

has the power to address issues related to bail and releases on personal recognizance.

the benefit of *Miranda* warnings and at a time when he was not represented by counsel. Judge Tisdale denied petitioner's motion, finding that although he was in custody when he made the inculpatory statement, he was not being interrogated within the meaning of *Miranda*. Judge Tisdale then ruled that the portion of petitioner's statement in which he said, "I'm not denying what happened," would be admissible, but that the remainder of the statement (that which was discernible) would be excluded because it contained "other crimes" evidence. Petitioner's counsel and the prosecutor both expressed concern about putting the statement, "I'm not denying what happened," in context. Judge Tisdale then convened a chambers conference in an effort to have the parties craft an appropriate stipulation pursuant to his ruling. Eventually, while petitioner reserved his objection to any admission, it was agreed that the statement would be admitted via this stipulation:

> "The parties agree that the evidence would show that the Defendant, Donald Fenner, appeared before the Honorable Judge Frederick J. Bower of the District Court of Frederick County, Maryland and in response to questioning at his bail hearing made the following statement: 'I'm not denying what happened.' "

Petitioner's first trial ended in a mistrial and he was retried on March 20 and 21, 2002. At retrial, the parties agreed that the suppression court's prior ruling concerning the statement petitioner made at the bail review hearing was binding. The Honorable G. Edward Dwyer, Jr. of the Circuit Court for Frederick County presided, with a jury, over the trial. The final piece of evidence the State wanted to adduce at trial was the stipulation crafted pursuant to Judge Tisdale's ruling on the motion to suppress. The parties agreed that Judge Dwyer should follow Judge Tisdale's earlier ruling, and, to preserve the issue on appeal, petitioner reaffirmed his objection to that earlier ruling, which Judge Dwyer overruled. The stipulation was thereafter read to the jury. On March 21, 2002, petitioner was found guilty of both the charge of distri-

bution of cocaine and the charge of conspiracy to distribute cocaine.

## II. Discussion

### A. Petitioner's Fifth Amendment *Miranda* Claim

Petitioner contends that inculpatory statements made by an accused at a bail review hearing where the accused was not given any *Miranda* advisements should be inadmissible at trial. The United States Supreme Court held in *Miranda v. Arizona, supra,* that:

> "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."

*Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

Thus, in order for the *Miranda* safeguards to take effect, there must first exist "custodial interrogation." We must therefore examine whether the District Court judge's questions of petitioner at petitioner's bail review hearing, at which he made inculpatory statements, constituted a "custodial interrogation."

"Custodial interrogation," was described in *Miranda* to "mean questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Id.* (emphasis added). In the case *sub judice,* it is clear that petitioner was in custody at the time of his bail review hearing. The real point of contention between petitioner and respondent, however, is whether the District Court judge's question, "Is there anything you'd like to tell me about yourself, sir?," can be said to constitute an "interrogation" within the meaning of *Miranda.*

In *Hughes v. State,* 346 Md. 80, 695 A.2d 132, *cert. denied,* 522 U.S. 989, 118 S.Ct. 459, 139 L.Ed.2d 393 (1997), we had the opportunity to examine when a question posed to a defendant by a law enforcement officer can be said to consti-

**10**

tute an "interrogation" in violation of *Miranda.* In *Hughes,* we adhered to the standard set forth by the United States Supreme Court in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), a standard focusing on whether the law enforcement officer knew or should have known that the questioning was reasonably likely to elicit an incriminating response. We explained in *Hughes* that:

> "Assessment of the likelihood that an otherwise routine question will evoke an incriminating response requires consideration of the totality of the circumstances in each case, with consideration given to the context in which the question is asked. The fact that the *answer* to a booking question assists the prosecution in proving its case is not determinative of whether a standard booking *question,* when posed, was *likely* to elicit an incriminating response. A benign question in one case may amount to 'interrogation,' for which *Miranda* warnings are required, in another case. Therefore, 'courts should carefully scrutinize the factual setting of each encounter of this type,' . . . keeping in mind that the critical inquiry is whether the police officer, based on the totality of the circumstances, knew or should have known that the question was reasonably likely to elicit an incriminating response."

*Hughes,* 346 Md. at 95–96, 695 A.2d at 140 (citation omitted).

█ We do not find that the District Court judge's [4] question, "Is there anything you'd like to tell me about yourself, sir?," was reasonably likely to elicit an inculpatory response from petitioner. Just as an arrestee may give what turns out to be an inculpatory response to a routine booking question, as described above in *Hughes,* petitioner gave what turned out to be an inculpatory response to a routine question posed by the District Court judge at petitioner's bail review hearing.

In *Williams v. State,* 342 Md. 724, 759, 679 A.2d 1106, 1124 (1996), Williams, after receiving *Miranda* warnings, blurted

---

4. A judge is not a "law enforcement officer," as such officers are contemplated in *Miranda* and its progeny.

out two incriminating statements as officers were conducting his processing.[5]  We said:

> "As the officers began to gather their papers, one of the officers told Williams to remove his earring and Williams mumbled under his breath, 'you can't get me.  I'll just say a girl gave me the card [the victim's ATM card].'  After this second statement, Detective Zywiolek testified that he commented that '[t]his is going to work' and reiterated to Williams that he was being charged with the murders of Gilbert and Trias.  At that point, Williams made a third statement: 'I know I'm never getting out.'"

In holding that the second and third statements were admissible, we held:

> "Hence, the question before us is whether the police continued to interrogate Williams after he invoked his right to remain silent and requested an attorney....
>
> "Thus, we must decide whether the words and actions of the detectives were reasonably likely to elicit incriminating responses from Williams.  We conclude that they were not....  These were routine procedures that the officers could hardly be expected to anticipate would prompt an incriminating statement....  We cannot conclude that the trial judge erred in finding that these [the officers'] innocuous comments were not reasonably likely to elicit an incriminating response from Williams."

*Id.* at 760–61, 679 A.2d at 1124–25 (alteration added).

In our earlier case of *State v. Conover,* 312 Md. 33, 35–37, 537 A.2d 1167, 1168–69 (1988), we stated the issue as:

> "The question presented by this appeal is whether the actions of the police in reading a statement of charges to the Respondent, and handing to him copies of the charging document and the application upon which it was based, constituted, under the circumstances here present, the func-

---

**5.**  Williams had made a previous statement, the "first statement," which the trial court suppressed.  The issue in that case related only to Williams' second and third statements.

tional equivalent of questioning, and thereby deprived Respondent of his Fifth Amendment right to have counsel present at a custodial interrogation.

. . .

"One of them [the police officers] read the Statement of Charges to Respondent and handed him copies of the Statement of Charges and the Application, suggesting that he 'read them, look at them, if you have any questions ask them.' . . . Respondent then asked a number of hypothetical questions, in the vein of 'what if' or 'suppose this,' and also uttered the statement that the State later used against him at trial: 'you can't put me with that .38.' " [Alteration added.]

We answered the question, by holding:

"Prior to the decision in *Innis,* we considered the application of *Miranda* to the routine processing of an arrested defendant, and concluded that:

'There seems to be a general agreement . . . that *Miranda* does not apply to "administrative questioning," the routine questions asked of all arrestees who are "booked" or otherwise processed.'

*Vines v. State,* 285 Md. 369, 376, 402 A.2d 900 (1979)."

. . .

"We infer no sinister motive from the fact that police provided Respondent with a copy of the Application as well as a copy of the Statement of Charges.

. . .

"The police acted reasonably and lawfully, and the Respondent was not subjected to compelling influences, psychological ploys, or direct questioning. His volunteered statement was properly admitted."

*Conover,* 312 Md. at 39–45, 537 A.2d at 1170–72.

While the present case is somewhat different from the setting in *Williams* and *Conover,* in that the blurted statement

occurred in open court in a District Court bail review hearing conducted by a District Court judge, the general routine question by the judge to which petitioner responded was much less likely to elicit an incriminating statement than the statements and actions of the officers in *Conover* and *Williams.* In the case at bar, there was less likelihood that petitioner was subjected to "compelling influences, psychological ploys" and he was not subjected to direct questioning in respect to the offenses for which he was charged.

We have never directly opined on these issues in the context of routine questions, and answers given in response to those routine questions, that occur during bail review proceedings conducted, not by law enforcement officers, but by District Court judges. The Court of Special Appeals, however, has directly addressed the issue in a case in which we denied a petition for certiorari.

The Court of Special Appeals' decision in *Schmidt v. State,* 60 Md.App. 86, 481 A.2d 241 (1984), *cert. denied,* 302 Md. 131, 486 A.2d 173 (1985), dealt with a defendant making an inculpatory statement at his bail hearing. In *Schmidt,* the defendant was charged with, *inter alia,* second degree rape and burglary. During his bail review hearing the judge asked Schmidt if he knew the alleged victim and Schmidt replied, "At the time, no sir, I didn't. I was drunk. I didn't know who it was." [6] *Id.* at 93, 481 A.2d at 244. At trial, Schmidt's defense was that he knew the victim and that they had engaged in consen-

---

6. In discussing the propriety of such a question given the circumstances with which Schmidt was arrested, the Court of Special Appeals stated:

"In this case, when the District Court judge asked Schmidt if he knew the alleged victim, the purpose of that question was to enable the judge to set an appropriate amount of bail, not to secure information for the prosecution. Whether the victim and the accused were acquaintances or total strangers may affect the nature and strength of the evidence against the accused. Accused of a serious crime and facing a potentially severe sentence if convicted, a defendant who can be identified with certainty by the alleged victim may represent a potential danger to the prosecuting witness or a substantial risk of nonappearance. These factors are clearly relevant to pretrial release."

*Schmidt,* 60 Md.App. at 99, 481 A.2d at 247–48.

sual sexual intercourse. Schmidt moved to suppress the statement, but the motion was denied. He was thereafter convicted in the circuit court of second-degree rape, second-degree sexual offense and burglary.

On appeal to the Court of Special Appeals, Schmidt argued that inculpatory statements made by an accused at a bail review hearing should be excluded under all circumstances. The intermediate appellate court disagreed and stated:

> "We see no need for the *per se* exclusionary rule urged by appellant. If an accused who is represented by counsel and who is made aware of his fifth amendment right volunteers a statement deemed helpful to his position at a bail hearing, there is no logical reason why that statement could not be used against him at trial."

*Schmidt*, 60 Md.App. at 95, 481 A.2d at 245. *See also United States v. Dohm*, 618 F.2d 1169, 1171 (5th Cir.1980) ("We disagree with [defendant's] contention that statements made by an accused while seeking bail are necessarily involuntary and coerced.") (alteration added).

In the alternative, Schmidt argued that his inculpatory statements were inadmissible because they were made in response to a custodial interrogation without the benefit of *Miranda* warnings during the bail review proceeding. The Court of Special Appeals agreed that Schmidt was in custody, stating that:

> "Schmidt was unquestionably in custody when he appeared before the District Court judge for a bail hearing. He had been arrested and charged; the very purpose of the hearing was to determine whether or under what circumstances he might be released from custody. With respect to the custody aspect, the fact that Schmidt was in a courtroom rather than the stationhouse is of no significance. Custodial questioning can occur in settings other than the police station...."

*Schmidt*, 60 Md.App. at 97–98, 481 A.2d at 246–47.

While the intermediate appellate court did agree that Schmidt was in custody, it did not agree with Schmidt's

contention that the bail review judge's questioning amounted to an interrogation triggering additional *Miranda* safeguards.[7] In explaining this view, the court stated:

> "Not all questions asked of a prisoner or suspect while he is in custody constitute a 'custodial interrogation' for purposes of requiring *Miranda* warnings. As Judge Orth noted for the Court in *Vines,* it is generally agreed that *Miranda* does not apply to 'administrative questioning,' the routine questions asked of all arrestees while being processed or 'booked.' Such routine questioning is conducted for purposes unrelated to evidence gathering and prosecution, so the questions are general in nature rather than specifically directed to any criminal offense. *Similarly, any questions asked of an arrestee at a bail hearing should normally be general and unrelated to evidence gathering or prosecution.*"

*Id.* at 99, 481 A.2d at 247 (citation omitted) (emphasis added).

The question asked of petitioner in the case *sub judice,* when compared to the question asked in *Schmidt,* is considerably less pointed. We hold that petitioner was not subject to "interrogation" within the meaning of *Miranda.* Here, the District Court judge merely asked him if there was anything he would like to tell about himself. There is absolutely no indication that the District Court judge's question was designed to elicit an incriminating statement. As we stated, *infra,* this was a routine, general question not designed to elicit any information about the specific criminal offense. It was an innocuous question.[8] Moreover, it was a proper ques-

---

7. The Court of Special Appeals' opinion in *Schmidt* indicates that Schmidt had been advised of his "constitutional rights" upon initially arriving at the police station prior to his bail review hearing.

8. In *Drury v. State,* 368 Md. 331, 341, 793 A.2d 567, 573 (2002), a case where the Court found that the specific actions of law enforcement officers did amount to custodial interrogation, Judge Raker, for the Court, distinguished that case from our holdings in *Vines, supra, Conover, supra,* and *Williams, supra:*

> "Like *Vines* and *Conover, Williams* is easily distinguished from the case before us on the basis that the police conduct in this case was

tion to ask in determining an appropriate amount of bail. Maryland Rule 4–216 (2004) states, in pertinent part:

"**Rule 4–216.   Pretrial release.**

. . .

(d) **Duties of judicial officer.**   (1) Consideration of factors.   In determining whether a defendant should be released and the conditions of release, the judicial officer shall take into account the following information, to the extent available:

(A) the nature and circumstances of the offense charged, the nature of evidence against the defendant, and the potential sentence upon conviction;

(B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;

(C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;

(D) any recommendation of an agency that conducts pretrial release investigations;

(E) any recommendation of the State's Attorney;

(F) any information presented by the defendant or defendant's counsel;

(G) the danger of the defendant to the alleged victim, another person, or the community;

(H) the danger of the defendant to himself or herself; and

(I) any other factor bearing on the risk of a wilful failure to appear and the safety of the alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within

not routine police procedure nor 'innocuous comment.' Corporal Whaley's actions were aimed at invoking an incriminating remark."

three years of the date the defendant is charged as an adult."

With the question, "Is there anything you'd like to tell me about yourself, sir?," the District Court judge was merely giving petitioner a chance to explain to the judge any circumstances that may have some bearing on his bail that had not been already covered in the prior questioning.[9] For instance, he might have used this opportunity to explain where he was employed, how long he had resided in the community, whether he had any family in the area, etc. Petitioner, in his response, however, chose to make an inculpatory statement.[10] Because he was not being interrogated, the inculpatory nature of his response does not mean that it must be excluded simply because it was not immediately preceded by *Miranda* warnings. If that were to be the case, any voluntary statement or blurt given while a person is in custody, unless it were immediately preceded by new *Miranda* warnings, would be excludable. That is not the law. *Miranda* warnings were designed to advise a defendant that anything he said might be used against him.

In *Schmidt,* the Court of Special Appeals further stated:

"Schmidt's anxiety to be released on bail does not amount to coercion to incriminate himself. Indeed, he was clearly acting under far less compulsion than if he had been subpoenaed to testify before a grand jury, a situation that does not require *Miranda* warnings. *See United States v. Mandujano,* 425 U.S. 564, 579–80, 96 S.Ct. 1768, 1777–78, 48 L.Ed.2d 212 (1976). In that case ... the Court [stated]:

---

9.  Maryland Rule 4–216(d) does not dictate the precise language that a judicial officer should use in his or her questioning to ascertain the information sought in (A)-(I).

10.  Due to the rather vague and often disjointed nature of petitioner's statement at the bail review hearing, we are not entirely certain that petitioner's statement was a *response* to the District Court judge's question at all. The statement would appear to be more akin to a voluntary blurt by petitioner.

'Those [*Miranda*] warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custody. *Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against compulsory self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in police station interrogation. But the *Miranda* Court simply did not perceive judicial inquiries and custodial interrogation as equivalents. "[T]he compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." ' [*Miranda*], 384 U.S. at 461 [86 S.Ct. at 1621]."

*Schmidt,* 60 Md.App. at 100, 481 A.2d at 248 (some alterations added). *See also Roberts v. United States,* 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980) (stating that the *Miranda* "exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.")

We hold that nothing in the setting of petitioner's January 10, 2001 bail review hearing can be said to have coerced him into making his inculpatory statement. The question posed, "Is there anything you'd like to tell me about yourself, sir?," was a routine question to ask in a setting such as a bail review hearing. Questions posed to an arrestee by a judge regarding matters relevant to bail, asked in the setting of a bail review hearing, do not normally amount to an "interrogation" requiring that the arrestee be again advised of his *Miranda* rights in order that his responses may be later admitted into evidence at his merits trial.[11] This necessarily leads us to petitioner's

---

11. We would urge trial judges, however, as a matter of good practice and policy, to advise defendants at initial bail hearings and bail review hearings that an inculpatory statement made at that hearing may be used against him or her at trial. The court should be extra careful in

next argument as to why his inculpatory statement should have been declared inadmissible—his lack of counsel at the bail review hearing.[12]

## B. Petitioner's Lack of Counsel at the Bail Review Hearing

■ We first note that there was no indication in the record that petitioner requested the presence of counsel at his bail review hearing and been denied counsel. As noted previously, he was not being interrogated in the sense contemplated by *Miranda.* Nonetheless, petitioner contends that the Circuit Court judge erred in allowing his statement to be admissible at trial due to his lack of legal counsel at the bail review hearing. For the reasons set forth below, we do not agree.

■ The Sixth Amendment to the United States Constitution,[13] applicable to the states through the Fourteenth Amendment, serves "to assure aid at trial," *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984), and therefore attaches at the commencement of adversary judicial criminal proceedings. *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2208–09, 115 L.Ed.2d 158 (1991); *see also Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (stating that the Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated ... 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' ") (quoting *Kirby v. Illinois,* 406 U.S.

---

asking questions of the defendant which may elicit incriminating responses and should focus on questions relating solely to the pretrial release decision.

**12.** The question in petitioner's certiorari petition did not clearly frame this issue separately; it appears only in the context of the question relating to the *Miranda* warnings issue. It was, however, argued in the briefs.

**13.** The Sixth Amendment provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). Article 21 of the Maryland Declaration of Rights also guarantees criminal defendants the right to assistance of counsel.[14] *See Harris v. State,* 303 Md. 685, 695 n. 3, 496 A.2d 1074, 1079 n. 3 (1985) (stating "[t]his Court has not distinguished between the right to counsel guaranteed by the Sixth and Fourteenth Amendments and the right provided by Art. 21 of the Maryland Declaration of Rights.") An accused's right to counsel, however, extends only to those "critical" proceedings in which " 'the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both' ... in a situation where the results of the confrontation 'might well settle the accused's fate and reduce the trial to a mere formality.' " *Gouveia,* 467 U.S. at 189, 104 S.Ct. at 2298 (citations omitted).

Petitioner's appearance before a District Court judge for the purpose of setting the appropriate amount of bail pursuant to Md. Rule 4–216 is not such a "critical" stage of the proceedings requiring that counsel be provided. *See Hebron v. State,* 13 Md.App. 134, 140, 281 A.2d 547, 550 (1971), *cert. denied,* 264 Md. 748 (1972) ("[w]e do not feel that the proceeding to set bail ... was a critical stage of the criminal proceedings within the constitutional concept of that term contemplated by *Coleman* [*v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)].... We conclude that the assistance of counsel was not constitutionally mandated."); *United States v. Hooker,* 418 F.Supp. 476, 479 (M.D.Pa.1976), *aff'd mem.,* 547 F.2d 1165 (3d Cir.1976), *cert. denied,* 430 U.S. 950, 97 S.Ct. 1591, 51 L.Ed.2d 799 (1977) (District Court stating that "[a] bail reduction hearing is not a 'critical stage' of the proceedings where the defense on the merits would be impaired without the assistance of counsel."); *Padgett v. State,* 590 P.2d 432, 436 (Alaska 1979) ("The setting of bail is ... not an

---

**14.** Article 21 of the Maryland Declaration of Rights provides, in pertinent part:

"That in all criminal prosecutions, every man hath a right ... to be allowed counsel...."

adversary confrontation wherein 'potential substantial prejudice' to 'the defendant's basic right to a fair trial' inheres, but rather is limited to the issue of interim confinement.") (quoting *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967)); *Ex parte Stewart*, 853 So.2d 901, 904 (Ala.2002) (holding, in the context of an initial appearance at which bail was set, that "the fact that the court may determine or evaluate the conditions for release does not create an adversarial proceeding or a 'critical stage.' ")

In *Coleman v. Alabama, supra,* the United States Supreme Court held that the assistance of counsel at a *preliminary hearing* was constitutionally mandated. Here, petitioner's bail review hearing occurred on the day after his arrest (January 10, 2001), but some two months prior to his preliminary hearing (March 20, 2001), and three months before the criminal information was filed (April 18, 2001).

In *Hebron v. State, supra,* the Court of Special Appeals had the opportunity to address the issue now before this Court, *i.e.,* whether the constitutional right to provided counsel applies at the bail hearing stage, an issue we have not addressed prior to the case *sub judice.* Referring to the Supreme Court's decision in *Coleman,* the intermediate appellate court held that an independent bail hearing was not, in and of itself, a "critical stage of the criminal proceedings within the constitutional concept of that term contemplated by *Coleman.*" *Hebron,* 13 Md.App. at 140, 281 A.2d at 550. In reaching its conclusion, the Court of Special Appeals stated:

"*Coleman* held that the assistance of counsel at a preliminary hearing such as conducted in Maryland was constitutionally mandated. The rationale of the holding was set out in the opinion of Mr. Justice Brennan in announcing the judgment of the Court. Noting that the principle of *Powell v. Alabama,* 287 U.S. 45[, 53 S.Ct. 55, 77 L.Ed. 158 (1932),] and succeeding cases requires that the Court scrutinize any pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him

and to have effective assistance of counsel at the trial itself, he concluded that the guiding hand of counsel at the preliminary hearing was essential to protect the indigent accused against erroneous or improper prosecution. He spelled out the reasons, [*Coleman,* 399 U.S. at 9, 90 S.Ct. at 2003]:

'First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail.'

It was the inability of the indigent accused on his own right to realize these advantages of a lawyer's assistance which compelled the conclusion that the preliminary hearing was a 'critical stage' of the criminal process at which the accused is as much entitled to aid of counsel as at the trial itself.

"Except that counsel may be influential in making effective argument as to the necessity of bail, we do not see how the other reasons set out in *Coleman* apply to a hearing the purpose of which is only to set bail and at which, as here, no witnesses were offered as to the substantive offense who could be examined or cross-examined, either to expose a fatal weakness in the State's case or to fashion a vital impeachment tool at trial or to preserve testimony favorable to the accused and no case was offered by the State for the accused's counsel to discover and prepare for. We do not believe that the absence of counsel for Hebron at the hearing derogated from his right to a fair trial."

*Hebron,* 13 Md.App. at 138–40, 281 A.2d at 549–50 (alterations added) (citations omitted) (footnotes omitted).

We are not prepared, in circumstances such as those existing here, to hold that a bail review hearing is a "critical stage" of criminal proceedings, at which provided counsel is required. Accordingly, we agree with the Court of Special Appeals' decision in *Hebron,* as it pertains to the right to counsel in the setting of a bail review hearing in the nature of that held in the case at bar, and hold, generally, that there exists no Sixth Amendment right to provided counsel during a bail review hearing, the only purpose of which is to ascertain the appropriate amount of bail pursuant to Md. Rule 4–216.

Our holding is also bolstered by the language of Md. Rule 4–213(a), which governs the procedure that a "judicial officer" [15] must follow during an accused's "initial appearance." Petitioner's bail review hearing occurred shortly after his initial appearance before a District Court commissioner on the morning of January 10, 2001. The Rule, in respect to the duties of a District Court commissioner at an initial appearance, states, in pertinent part:

"**Rule 4–213. Initial appearance of defendant.**

(a) **In District Court following arrest.** When a defendant appears before a judicial officer of the District Court pursuant to an arrest, the judicial officer shall proceed as follows:

. . .

(2) Advice of right to counsel. The judicial officer shall require the defendant to read the notice to defendant required to be printed on charging documents in accordance with Rule 4–202(a), or shall read the notice to a defendant who is unable for any reason to do so. A copy of the notice shall be furnished to a defendant who has not yet received a copy of the charging document. The judicial officer shall

---

**15.** Md. Rule 4–102(f) (2004) defines a "judicial officer" as meaning "a judge or District Court commissioner."

advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceeded to trial with the defendant unrepresented by counsel.

. . .

(4) Pretrial release. The judicial officer shall comply with Rule 4–216 governing pretrial release."

As is made plainly clear in Md. Rule 4–213(a)(2), while the judicial officer presiding over the accused's initial appearance [16] shall make the accused aware of his right to counsel and that counsel will be provided to him if he cannot afford private counsel, which the District Court commissioner in this case presumably did,[17] nothing in the Rule suggests that this right to provided counsel attaches at either the initial appearance or a later bail review hearing. Accordingly, we hold that petitioner was not unconstitutionally denied his Sixth Amendment right to provided counsel when he appeared at a bail review hearing. The bail review hearing was not a "critical stage" of the proceedings at which the Sixth Amendment right to provided counsel attaches.

## C. Admission at Trial of the Redacted Version of the Statement

█ Petitioner argues that the trial court's admission of his statement at the bail review hearing, in which he stated, "I'm not denying what happened," was improper because it was "too vague and misleading to the trier of fact." In its decision, the Court of Special Appeals held that "the suppression court did not err in finding that the stipulation based upon the edited statement was admissible at trial. Although the statement was edited, the meaning of the statement was not so

---

**16.** An initial appearance, which, as occurred in the case *sub judice* and is required by Md. Rule 4–213(a)(4), shall involve a "pretrial release" determination.

**17.** *See infra* note 2.

vague or altered that the jury would be unable to understand its meaning."

■ It is well established in Maryland that the admission of relevant evidence, the admissibility of which is not prohibited by a specific rule or principle of law, is committed to the considerable and sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *See Merzbacher v. State*, 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997) (stating that, "[o]nce a finding of relevancy has been made, we are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion.")[18] All relevant evidence is generally admissible. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401; *see also* Md. Rule 5–402 (stating that "[e]xcept as otherwise provided by constitutions, statutes, or these rules, or by decisional law not inconsistent with these rules, all relevant evidence is admissible.") We have also stated, however, that:

"A finding by the trial judge that a particular piece of evidence is relevant, however, does not mean that evidence is automatically admissible. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.... As with the trial court's relevancy determination, a decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion."

*Williams v. State*, 342 Md. 724, 737, 679 A.2d 1106, 1113 (1996) (citations omitted).

---

18. As we indicated earlier, part of petitioner's statement was not admitted because it was found inadmissible as its admission would have been contrary to a principle of law, *i.e.*, that "other crimes" evidence is, generally, inadmissible.

In the case *sub judice*, the trial court found that petitioner's statement, "I'm not denying what happened," was relevant and let it be read to the jury. We do not believe that this decision by the trial court amounted to an "abuse of discretion." Although the statement was edited, we cannot say that the remaining portion read to the jury was so vague or misleading as to have made the statement inadmissible at trial. Even assuming, *arguendo*, that the statement, as admitted, was in some way ambiguous, any ambiguity went to the weight of the statement itself and not to its admissibility. Therefore, we hold that the trial court did not abuse its discretion in allowing the stipulation containing the inculpatory statement to be read to the jury.

### III. Conclusion

We hold that the District Court judge's question to petitioner at his bail review hearing, asking him "Is there anything you'd like to tell me about yourself, sir?," did not amount to a "custodial interrogation," and, therefore, was not in violation of the requirements of *Miranda*. The question posed to petitioner was a general question appropriate at a bail review hearing and not designed to elicit any information from him about the specific criminal offense.

We also hold that there existed no Sixth Amendment right to provided counsel at petitioner's bail review hearing. A bail review hearing, such as the one that took place here, is not normally a "critical stage" of trial. We do not find that a proceeding, the purpose of which was merely to review bail and inform petitioner of the scheduled date for his preliminary hearing, was an "adversary judicial criminal proceeding" that would require the aid of provided counsel. Because petitioner's bail review hearing was not a "critical stage" of the merits trial, there existed no Sixth Amendment right to provided counsel at that time.

Lastly, we hold that the trial court did not err in allowing an edited segment of petitioner's inculpatory statement, in which he stated, "I don't deny what happened," to be read to the jury. The statement was unquestionably relevant and it was

not so vague or misleading as to be unfairly prejudicial to petitioner. Therefore, the trial court did not commit an abuse of discretion when it allowed the stipulation, which contained the statement, to be read to the jury.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**