**UNITED STATES of America**

v.

**John Anthony WALKER, Jr., et al.**

**Crim. No. H–85–0309.**

United States District Court,
D. Maryland.

Aug. 15, 1985.

Michael Schatzow and Robert N. McDonald, Asst. U.S. Attys., Baltimore, Md., for the Government.

Fred Warren Bennett, Federal Public Defender and Thomas B. Mason, Asst. Federal Public Defender, Baltimore, Md., for defendant John Anthony Walker.

## MEMORANDUM DECISION

ALEXANDER HARVEY, II, District Judge.

Charged in this case with espionage and related crimes, defendant John Anthony Walker, Jr., has asked this Court, *inter alia*, to suppress certain statements made by him during a conversation with federal law enforcement authorities after he was arrested. Defendant argues that the statements were obtained in violation of rights secured to him by the Fifth Amendment to the Constitution of the United States. Defendant's motion seeks only to bar use of these statements in the government's case-in-chief. Defendant has conceded in his

brief that the statements were voluntarily made. However, it is urged that law enforcement officers did not comply with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and that the statements should be suppressed pursuant to those rulings of the Supreme Court.

The relevant facts are as follows. In the early morning of May 20, 1985, defendant was arrested in Rockville, Maryland by several agents of the Federal Bureau of Investigation (the "FBI"). At that time, defendant was searched and advised of the identities of the arresting agents. Also, the agents informed defendant that he was under arrest for the crime of espionage. Immediately thereafter, an FBI agent informed defendant of his *Miranda* rights by reading to defendant the contents of the standard FBI form entitled "Interrogation: Advice of Rights" (Form FD 395, as revised 6/22/77). Defendant stated that he understood his rights and would sign that portion of the form which would evidence that he had been informed of his rights. Defendant read the form himself, stated once again that he understood his rights, and signed the form. Defendant also stated that he did not wish to waive his rights. He crossed out that portion of the form which indicates a waiver of rights by the suspect.

Defendant was then moved to the Baltimore Office of the FBI. At about 6:00 a.m. (some two hours after his arrest in Rockville), defendant was told that he would be questioned about the charges of espionage for which he had been arrested. An FBI agent showed defendant the advice-of-rights form referred to earlier. Defendant invoked his *Miranda* rights for the second time. He stated that he recognized the form, that he understood his rights, and that he wished to make no statement until he had spoken with an attorney. Five to ten minutes after defendant had invoked his *Miranda* rights for a second time, FBI agents showed defendant a copy of a document which had been seized by the FBI on May 19, 1985. After viewing the doc-

ument, defendant stated that he had no comment to make. The agents did not then question defendant any further.

About one hour later, at 7:15 a.m., defendant, while he was waiting to be transferred to the Marshal's lock-up, himself initiated a conversation with the agents by addressing a question to the agent. One of the agents present responded to defendant's question, and defendant then replied to the agent's response.

After making this reply, defendant refused to make further comment until he consulted with an attorney. The matter was not pursued further by the agents. Defendant now asks that the Court suppress the entire conversation which he had with the FBI agents at or about 7:15 a.m. on this particular morning. The Court has had an opportunity to review a report concerning what defendant said to the agents on this occasion. His comment was brief and exculpatory. Nevertheless, since the government has indicated that it wishes to use this evidence in the trial, the issue is here joined as to whether it should be suppressed.

Whenever a suspect is taken into custody and the authorities wish to interrogate him, the suspect is entitled to the procedural safeguards set out in *Miranda v. Arizona, supra*. One of these safeguards is the suspect's right to consult with an attorney. Under *Miranda*, once a suspect expresses his desire to consult with an attorney, the suspect cannot be subjected to further interrogation, until counsel has been made available to him or until the suspect validly waives his earlier request for assistance of counsel. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981).

The rigid rule of *Edwards* requires two separate inquiries by the Court. First, a court must determine whether defendant actually invoked his Fifth Amendment right to counsel. Secondly, if the defendant did invoke his right to counsel, a court may admit his response to further questioning only on a finding first that

defendant himself initiated further discussions with the authorities, and secondly that he knowingly and intelligently waived the right to counsel which he had previously invoked. *Smith v. Illinois,* — U.S. —, —, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488, 493–94 (1984). In recent years, the Supreme Court has repeatedly emphasized this restraint on police interrogation. *See, e.g., Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). It is apparent from these recent Supreme Court decisions that this bar on subsequent interrogation after a suspect has invoked his *Miranda* right to have counsel present is not affected by the fact that subsequent questioning may not be coercive. Rather, all interrogation must cease. *Smith v. Illinois, supra.*

■ Furthermore, for purposes of the Fifth Amendment and the *Miranda* safeguards, interrogation encompasses much more than mere questioning of a suspect. As the Supreme Court has stated in *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1981):

> ... [T]he *Miranda* safeguards come into play whenever a person in custody is subject to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response ... from the suspect.

*Innis, supra* at 300–01, 100 S.Ct. at 1689.

Applying these principles to the facts here, this Court concludes that the statements made by defendant to FBI agents at or about 7:15 a.m. on May 20, 1985, must be suppressed. Suppression is mandated by the Supreme Court cases of *Edwards v. Arizona, supra* and *Rhode Island v. Innis, supra.* Under *Edwards,* when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing merely that he later responded to custodial interrogation. *See* 451 U.S. at 484, 101 S.Ct. at 1884. This rule has been regarded as a *per se* bar to further interrogation after a suspect has asserted his right to counsel. *See Clark v. Marshall,* 600 F.Supp. 1520, 1528 (N.D. Ohio, 1985). Only when the suspect himself later initiates the further conversation with the police may there be further interrogation of him by the authorities. *Edwards, supra,* 451 U.S. at 485, 101 S.Ct. at 1885.

In this case, defendant clearly invoked his right to counsel. Moreover, it was the law enforcement officers who initiated the functional equivalent of further questioning when defendant was shown a copy of an incriminating document seized on May 19, 1985. As the Supreme Court made clear in the *Innis* case, the *Miranda* safeguards apply to either express questioning or its functional equivalent. *See* 446 U.S. at 300, 100 S.Ct. at 1689. Thus, actions taken by the police which the police should know are reasonably likely to elicit an incriminating response from the suspect amount to the functional equivalent of express questioning. *Id.* at 300, 100 S.Ct. at 1689.

■ Here, when the agents showed defendant the document in question only ten minutes after he had invoked his *Miranda* right to counsel, they had to know that such act was reasonably likely to elicit an incriminating response from the defendant. The document itself was incriminating in nature, and the mere showing of it to the defendant was the functional equivalent of an express question directed to him concerning his espionage activities. A response was implicitly called for, and in fact a response was later forthcoming. The mere fact that there was a delay of approximately one hour before the defendant responded by commenting on the document he had been shown is not sufficient to constitute a waiver of defendant's right to have counsel present before he made any statement at all. Indeed, in the *Edwards*

case there was a delay of some 24 hours, and it was found that there was no waiver. Similarly, the facts here do not show that there was any waiver by defendant of his right to counsel, a right he had earlier invoked when his *Miranda* rights were read to him.

*Edwards* and subsequent cases make clear that law enforcement authorities must cease custodial interrogation as soon as a defendant invokes his *Miranda* safeguards. The agents did not do so here when they showed defendant the document in question. It was thus the agents who initiated the later interrogation (or the functional equivalent thereof) in this case, and such interrogation directly led to the statements in question.

Under *Edwards* and *Innis* then, these statements cannot be used by the government as a part of its case-in-chief. However, they may be used for impeachment purposes in cross-examination of defendant if he testifies, or, if relevant for rebuttal. See *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Accordingly, defendant's motion to suppress the statements made on May 20, 1985, will be granted. An appropriate Order will be entered.