849 A.2d 410

**Leeander Jerome BLAKE**

v.

**STATE of Maryland.**

**No. 81, Sept. Term, 2003.**

Court of Appeals of Maryland.

May 12, 2004.

Reconsideration Denied June 16, 2004.

Kenneth W. Ravenell (Erin C.Murphy, Schulman, Treem, Kaminkow, Gilden & Ravenell, P.A., on brief), Baltimore, for petitioner.

Anabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

RAKER, J.

This case is an interlocutory appeal filed by the State [1] from an Order in the Circuit Court for Anne Arundel County

---

1. Pursuant to Maryland Code (1973, 2002 Repl.Vol., 2003 Cum.Supp.) § 12–302(c)(3)(i) of the Courts and Judicial Proceedings Article, the State may appeal in the following circumstances:

"In a case involving a crime of violence as defined in § 14–101 of the Criminal Law Article, and in cases under §§ 5–602 through 5–609 and §§ 5–612 through 5–614 of the Criminal Law Article, the State may appeal from a decision of a trial court that excludes evidence offered by the State or requires the return of property alleged to have

granting Leeander Jerome Blake's motion to suppress his incriminating statements on the grounds that the police elicited his statements in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Court of Special Appeals disagreed with the Circuit Court, and in an unreported opinion, reversed. This Court granted Blake's petition for writ of certiorari to consider the single question of whether the police actions in question constituted the functional equivalent of interrogation following petitioner's invocation of his *Miranda* rights, thereby violating petitioner's right against compelled self-incrimination. *Blake v. State,* 378 Md. 176, 835 A.2d 1103 (2003). We shall hold that the police actions constituted the functional equivalent of interrogation, thereby violating petitioner's rights, and, under the circumstances presented herein, the trial court properly suppressed petitioner's statements.

## I.

Petitioner was indicted by the Grand Jury for Anne Arundel County for the offenses of first degree murder, second degree murder, and manslaughter, in violation of former Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), Article 27 § 407, § 411, and § 387.[2] Straughan Lee Griffin, a resident of Annapolis, was shot and killed in front of his home on September 19, 2002. His assailant[s] shot him in the head, stole his automobile, and ran over his body as they fled from the scene.

Petitioner filed an omnibus pre-trial motion to suppress all evidence seized by the State. We focus here on his motion to suppress his incriminating statements. The Circuit Court

---

been seized in violation of the Constitution of the United States, the Constitution of Maryland, or the Maryland Declaration of Rights."

**2.** Article 27 of Maryland Code (1957, 1996 Repl.Vol., 2001 Cum.Supp.), which was in effect when the events here occurred, has since been repealed and recodified. The provisions relating to first degree murder, second degree murder, and manslaughter are now found in Maryland Code (2002, 2003 Cum.Supp.) § 2–201, § 2–204, and § 2–207 of the Criminal Law Article.

held an evidentiary hearing and granted the motion to suppress. We set forth the facts as developed at the suppression hearing.

On October 25, 2002, Terrence Tolbert was arrested in connection with the murder of Straughan Lee Griffin. Tolbert implicated petitioner in the crime. Between 4:30 and 5:00 a.m. on the following day, the Anne Arundel County police arrested petitioner at his home. Petitioner was wearing boxer shorts and a tank top and no shoes. He was handcuffed and transported by uniformed officers to the Annapolis Police Department.

The police took petitioner to a room identified as an "intake room" or "booking room." Detective William Johns, the lead detective, advised petitioner of his rights pursuant to *Miranda v. Arizona.* Petitioner invoked his right to counsel, indicating he did not wish to speak with the police officers without an attorney, and after signing the police advice of rights form, he then was placed in a holding cell at approximately 5:25 a.m.

At 6:00 a.m., Detective Johns, accompanied by uniformed Officer Curtis Reese, went to petitioner's cell and gave him a copy of the arrest warrant and statement of charges.[3] Detective Johns explained the charges to petitioner and told him that they were serious charges, and that he needed to read the document carefully and make sure he understood it.

The statement of charges that Detective Johns gave to petitioner was a District Court of Maryland computer printout listing the charges. The statement of charges indicated that petitioner was charged with first degree murder, second degree murder, armed robbery, armed carjacking, and use of a handgun in a crime of violence. The penalty stated on the

---

**3.** Md. Rule 4–212(e) requires that a defendant be served with a copy of the statement of charges. The Rule provides, in pertinent part:

"[A] warrant shall be executed by the arrest of the defendant. Unless the warrant and charging document are served at the time of the arrest, the officer shall inform the defendant of the nature of the offense charged and of the fact that a warrant has been issued. A copy of the warrant and charging document shall be served on the defendant promptly after the arrest."

document for the offense of first degree murder was, in all capital letters, "DEATH." Petitioner's date of birth, reflected on the statement of charges, was June 1, 1985; he was seventeen years of age. As a person under the age of eighteen years at the time of the offense, petitioner was not eligible for the death penalty. *See* Md.Code (2002, 2003 Cum.Supp.) § 2–202(b)(2)(i) (to be death eligible in Maryland, a person must be eighteen years of age or older).

Detective Johns testified that after he handed petitioner the charging document and turned to leave, Officer Reese, apparently having followed Detective Johns to the cell block area, appeared and said, in a tone Detective Johns characterized as loud and confrontational, "I bet you want to talk now, huh!" Detective Johns said that he was surprised by Officer Reese's statement, that it was unexpected, and that Detective Johns said, very loudly within petitioner's hearing, "No, he doesn't want to talk to us. He already asked for a lawyer. We cannot talk to him now." Detective Johns testified that he was concerned that "Officer Reese's outburst would violate Mr. Blake's request for counsel prior to being questioned" and, as a result, he told Officer Reese that petitioner had asked for an attorney and they could not reinitiate any kind of conversation with him.

Petitioner remained in the cell block, wearing only his boxer shorts and t-shirt. Approximately one-half hour after the earlier contact, Detective Johns went back to petitioner's cell to give petitioner his clothing which had been brought to the station by another police officer. Detective Johns opened the exterior door, walked in front of petitioner's cell, and handed him the clothing. Petitioner then said, "I can still talk to you?" Detective Johns responded: "Are you saying that you want to talk to me now?" Petitioner responded "yes." Detective Johns left the cell area and returned after a few minutes. He told petitioner that he would have to read him his rights again and that he would be back in a few minutes. Petitioner then was taken back to the intake room, was re-advised of his *Miranda* rights, which he waived, and agreed to provide a statement in the absence of an attorney.

Petitioner made certain incriminating statements to Detective Johns as he explained his involvement in the events of September 19, 2002. Detective Johns asked him if he would be willing to take a polygraph exam and petitioner agreed. He was transported to Maryland State Police Barracks J in Annapolis, where Corporal Lloyd E. White again advised petitioner of his *Miranda* rights. After the test was administered, petitioner made further statements.

Petitioner testified at the hearing on the motion to suppress. He testified that he was at home watching television in the early morning hours of October 26, 2002, when he was arrested at approximately 4:30 a.m. Wearing only a tank top, boxer shorts, and no shoes, he was handcuffed and taken outside, where it was cold and wet, and transported to the police station. He was placed in a room and was told by an officer that Terrence Tolbert had identified him as the shooter of Mr. Griffin. He said he wanted a lawyer and was placed in a cell. He said that when Detective Johns and Officer Reese gave him a copy of his charges and Officer Reese made the statement to him, he had just seen that he was facing the death penalty and he was scared. The two officers left, Detective Johns brought him his clothing and then left, and then Detective Johns returned. Petitioner's description of what ensued next differed from that of Detective Johns.[4] Petitioner's version is that the detective initiated the conversation again, stating: "Mr. Blake, do you wish to still talk to me?" In response, petitioner said, "May I still talk to you?" The detective allegedly responded, "Yes." Petitioner denied first asking Detective Johns if he could talk to him.

In response to a question asking petitioner what caused him to speak to Detective Johns after he had invoked his *Miranda* rights, petitioner stated:

"First, it was what Officer Reese said to me, 'I bet you want to talk now, huh!' I was scared, cold. Never went through

---

4. The hearing judge accepted Detective Johns's version of events regarding who spoke first after Detective Johns returned.

nothing like this. And I saw my charges and I saw I was facing death."

The Circuit Court granted petitioner's motion to suppress his statements. Judge Pamela North began by noting that petitioner had invoked his right to counsel and that pursuant to *Miranda*, no further interrogation could ensue. Judge North found the following:

"The Defendant was still in underwear with no shoes on. During this time, the Defendant made no statements and asked no questions. There was, as of this point, no indication the Defendant would change his mind.

At approximately 6:00 a.m., Detective Johns and Officer Reese, and Officer Reese, by the way, was the same officer who had previously transported the Defendant to the Annapolis Police Department. They both walked back to his cell. As in *Edwards*, Defendant did not request or suggest that the officers should come back to his cell. Defendant was awake. Johns took the statement of charges back to the Defendant, handed them to him, and read the charges to him. Johns testified, and this is a quote, "I said to him, they are serious charges. He needs to read it carefully and make sure he understood it."

As Johns turned to walk out, Reese said, in a confrontational loud voice, "I bet you want to talk now, huh!" Johns testified he was surprised by this.

\* \* \*

[Detective Johns] also erroneously served him with a document which stated that the penalty for count one murder was death. The word death being written in all capital letters. Defendant was, in fact, not eligible for the death penalty. This was either done intentionally or by mistake. . . . No matter who was responsible for death being typed in capital letters on the penalty section for murder, it was still State action.

So the next question is was there interrogation? Was there a statement made by the police which the police knew or

should have known would be reasonably likely to elicit an incriminating response? That answer has to be yes.

\* \* \*

I believe the State's argument misses the mark when it focuses on what Johns intended or did not intend. Reese is also a police officer. He constitutes State action. And he clearly intended that the Defendant make a statement.

\* \* \*

So the question is how do we know what Reese intended. Well, let's analyze the remark he made. Defendant is handed a statement of charges indicating to him, a seventeen-year-old, indicating to him for the first time that he is being charged with murder and he can get the death penalty.

Reese's statement was, "I bet you want to talk now, huh!" This is not a vague appeal to Defendant's conscience like the remarks were in *Brewer versus Williams.* First, the statement, itself, suggests he should want to talk. And the word, "now," that is, "I bet you want to talk now" clearly refers Defendant to what has just been handed to him. In other words, look at those charges, look at that penalty, and I'll bet you will want to talk.

\* \* \*

It is a statement made specifically for the purpose of getting Mr. Blake to talk. In fact, Mr. Blake's question is in direct response to Reese's previous statement. The police left the cellblock area immediately after Reese made that statement. So, until 6:28 when they came back there had been no opportunity for the Defendant to ask if he could talk to them. Since twenty-eight minutes had passed, he asked, "I can still talk to you?" Even though that period of time had passed.

Is there any possible interpretation of that statement that it is, as the State has urged the Court to find, simply an innocent offhanded comment not meant or expected to elicit an incriminating response? I don't think so. Examples of innocent offhanded comments not likely to elicit an incrimi-

nating response would be, quote, "Here are some clothing for you." Or, "Please move away from the door so I can unlock it." Or, "Do you need a drink of water?"

*United States v. Walker* instructs courts to look at the context in which the statement is made. Once again, the context is the statement was made to a seventeen-year-old with no *Miranda* or interrogation experience, who was still in a chilly cell in his underwear with no shoes on, without a parent present or available, just as he is being handed papers advising him he is charged with murder and can get death.... That statement, under these circumstances, was enough to make an adult repeat offender squirm, not alone a seventeen-year-old.

\* \* \*

Here, Defendant is still in custody, still at the Annapolis police department. Only twenty-eight minutes has gone by since the illegal interrogation. Enough time for him to read the charging document and only one hour and seventeen minutes since he invoked his right to counsel.

He is still seventeen years old. Still undressed.. Still in a cold cell, where he is facing death. And an officer had made a case for him to speak now through that officer's coercive statement.

He has no parent present. The Defendant testified that he was scared and cold and thought he was facing death.

\* \* \*

Once Defendant made certain incriminating statements, he was then asked by Detective Johns if he wanted to take a polygraph. This is all one continuous stream of events. There was no break in time or place here. No attenuation.

\* \* \*

The polygraph process began at about 8:30 or 9:00 o'clock with Defendant's mother present at the Maryland State Police Barracks. She signed a consent form but never saw or spoke to the Defendant. We now have a change of location and the re-Mirandaizing of the Defendant.

However, this is all one continuous course of conduct beginning with Officer Reese's statement and other coercive circumstances. Defendant had, as some cases talk about, already let the cat out of the bag. It is unlikely that an honest seventeen-year-old who is respectful of authority would realize he could turn back now.

There was no lengthy period of time as we see in some cases to break the chain of events and to prove attenuation. In any event, viewing the evidence under the totality of the circumstances, the Defendant did invoke his right to counsel.

He was thereafter interrogated by police in violation of *Miranda* and *Edwards*. The State must prove his subsequent *pro forma* waiver was not the result of the previous coercive unlawful police conduct. And they have not met that heavy burden."

The trial court held that Officer Reese's statement was interrogation and that it violated *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The court granted Blake's motion to suppress as to any and all statements he made at the Annapolis police department and at the Maryland State Police Barracks.

The State noted a timely appeal to the Court of Special Appeals. A divided intermediate appellate court, in an unreported opinion, Bloom, J., dissenting, reversed the judgment. We granted petitioner's writ of certiorari to answer the following question: "Did the police actions in question constitute the functional equivalent of interrogation?" 378 Md. 176, 835 A.2d 1103.

## II.

There is no dispute in this case that petitioner was in custody and had invoked his right to counsel. The first question is whether the statement of Officer Reese constituted "police-initiated custodial interrogation" in contravention of

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Petitioner argues that Officer Reese's comment, made in conjunction with Detective Johns's passing to petitioner a copy of the statement of charges which incorrectly informed him he was facing the death penalty, was the functional equivalent of interrogation. He maintains that the comment was made specifically for the purpose of getting petitioner to talk and the officer knew or should have known that, under the circumstances, the comment was likely to elicit an incriminating response. Petitioner argues that his subsequent statements were suppressed properly because they were a product of the unlawful police-initiated interrogation which violated *Edwards.*

The State's argument is that Officer Reese's remark to petitioner was not interrogation—that petitioner initiated contact with the police after he read the charging documents and then voluntarily waived his *Miranda* rights before making incriminating statements. The State contends that Officer Reese's remark was not the functional equivalent of interrogation—that it was nothing more than a comment on the seriousness of the charges and, in a sense, a rhetorical question. Even if Officer Reese's remark is viewed as interrogatory or as an invitation to talk, the State maintains that Detective Johns removed any alleged taint from the remark when he admonished Officer Reese immediately that they could not talk to petitioner because he had invoked his right to counsel.

### III.

 Our review of the trial court's ruling on a motion to suppress evidence is limited to the record developed at the suppression hearing. *See White v. State,* 374 Md. 232, 249, 821 A.2d 459, 469 (2003). We accept the facts as found by the motions judge unless they are clearly erroneous. *Id.* The evidence is to be viewed in the light most favorable to the prevailing party. *See State v. Rucker,* 374 Md. 199, 207, 821 A.2d 439, 444 (2003). We "undertake our own independent constitutional appraisal of the record by reviewing the law and

applying it to the facts of the present case." *See White,* 374 Md. at 249, 821 A.2d at 469.

■■■ *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), dictates that when a suspect is taken into custody, the person is entitled to certain procedural safeguards before law enforcement officers may interrogate that person. Those rights include the right to consult with an attorney. *Id.* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706–07. Once a suspect asks to speak with an attorney, that person may not be interrogated further until either counsel has been made available or until the suspect validly waives the earlier request for an attorney. *Id.* at 444–45, 86 S.Ct. at 1612, 16 L.Ed.2d at 707. *See Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386; *Radovsky v. State,* 296 Md. 386, 392–93, 464 A.2d 239, 242–43 (1983) (noting *per se* rule precluding police-initiated interrogation after an arrestee has expressed a desire for the assistance of counsel); *Bryant v. State,* 49 Md.App. 272, 279, 431 A.2d 714, 718 (1981) (stating that "even at the expense of redundancy ... *Miranda* and *Edwards* mean exactly what they say: once the accused requests the presence of counsel at a custodial interrogation, the Fifth Amendment to the Constitution of the United States of America and Article 22 of the Maryland Declaration of Rights are *ipso facto* invoked, and *all questioning must cease* ").

■■■ Under the rule developed in *Edwards,* "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1885, 68 L.Ed.2d at 386. The Supreme Court held that once a suspect has invoked his right to counsel, the police may not make a subsequent attempt to elicit a waiver and then a statement by re-advising him of his *Miranda* rights. A constitutionally valid statement may be obtained by the police in two ways: if the suspect initiates further conversation with the police or if an attorney has been made avail-

able to the suspect. *See Smith v. Illinois,* 469 U.S. 91, 94–95, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488, 493–94 (1984). Following a suspect's request for counsel, a valid waiver of that right cannot be established by showing only that the accused responded to further police-initiated interrogation. *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. *See Radovsky,* 296 Md. at 398–99, 464 A.2d at 246 (holding that after Radovsky had invoked his right to counsel, the police improperly initiated custodial interrogation in violation of *Edwards* ). The burden is on the State to prove that, after invoking his or her right to counsel, the accused initiated further discussion with the police. *See State v. Munson,* 594 N.W.2d 128, 141 (Minn.1999) (holding that "the state has the burden of proving that, after invoking his right to counsel, [defendant] initiated further discussion with the police"). If we find that petitioner did not initiate further discussions with the police, following *Edwards,* we do not consider whether he subsequently waived his right to counsel.[5] *See Oregon v. Bradshaw,* 462 U.S. 1039, 1046, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405, 413 (1983) (stating that "[s]ince there was no violation of the *Edwards* rule in this case, the next inquiry was

---

5. Some courts have held that a defendant's statements are inadmissible once the police have initiated contact with the defendant in violation of *Edwards,* rendering it unnecessary to inquire whether the defendant validly waived his or her *Miranda* rights. *See, e.g., State v. Munson,* 594 N.W.2d 128, 140 (Minn.1999) (holding that, where officers resumed interrogation before the suspect initiated further conversation, suspect's statements must be excluded and the court need not reach the question of whether suspect's subsequent waiver was voluntary). The Supreme Court has suggested the same. In *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court stated, *"[s]ince there was no violation of the* Edwards *rule in this case,* the next inquiry was 'whether a valid waiver of the right to counsel and the right to silence had occurred.' " *Id.* at 1046, 103 S.Ct. at 2835, 77 L.Ed.2d at 413 (emphasis added). Implicit in this statement is the notion that courts do not engage in a waiver inquiry when it is the police, rather than the suspect, who "initiate" contact. *See also Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631, 642 (1986) (applying *Edwards* rule to a claimed violation of defendant's Sixth Amendment right to counsel and holding that "if police initiate interrogation after a defendant's assertion ... of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid").

'whether a valid waiver of the right to counsel and the right to silence had occurred' "); *Radovsky,* 296 Md. at 392, 464 A.2d at 242 (holding that "the defendant's right to have counsel during interrogation was violated, under the principles of *Edwards* and *Miranda,* and thus all evidence obtained from Radovsky subsequent to his request for counsel should have been suppressed").

 Interrogation means more than direct, explicit questioning and includes the functional equivalent of interrogation. *See Drury v. State,* 368 Md. 331, 793 A.2d 567 (2002). The Supreme Court, in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), set out the test for establishing when a suspect, who is in custody and has invoked the right to counsel but does not yet have the assistance of counsel, has been subjected to "interrogation." The Court stated:

> "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its *functional equivalent.* That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."

*Id.* at 300–01, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 307–08 (emphasis added) (footnotes omitted).

 Although the test of whether the police should know their words or actions are reasonably likely to elicit an incriminating response is an objective one, the intent of the police is not irrelevant. *Id.* at 301–02 n. 7, 100 S.Ct. at 1690 n. 7, 64 L.Ed.2d at 308 n. 7. If a police officer acts with a purpose of getting a suspect to talk, it follows that the officer has reason to know that his or her conduct was reasonably likely to elicit an incriminating response. *Id.* at 302 n. 7, 100 S.Ct. at 1690 n. 7, 64 L.Ed.2d at 308 n. 7. We focus on the defendant's perspective rather than on the police officer's

intent. *See Arizona v. Mauro,* 481 U.S. 520, 528, 107 S.Ct. 1931, 1936, 95 L.Ed.2d 458, 467 (1987).

"Interrogation," as used in *Miranda,* has been further explicated in *Innis,* as follows:

"[T]he term 'interrogation' . . . refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."

*Innis,* 446 U.S. at 301–02, 100 S.Ct. at 1689–90, 64 L.Ed.2d at 308 (citations omitted).

The State maintains that petitioner's rights under *Miranda* and *Edwards* were not violated because the police were presenting petitioner merely with the charging document, a duty they were mandated to perform under Maryland law. The State characterizes Officer Reese's comment as nothing more than a comment on the seriousness of the charges and as a rhetorical question, concluding that his comment does not constitute interrogation. The answer to this argument depends upon the answer to the question as to whether, under *Innis,* the police officers engaged in activities which they should have known were reasonably likely to elicit an incrimi-

nating response. No one disputes here that once petitioner invoked his *Miranda* rights, there was no express questioning.

The Circuit Court found that the comment of Officer Reese amounted to the functional equivalent of interrogation. We agree.

Petitioner clearly and unequivocally invoked his right to counsel under *Miranda.* Thereafter, within a very short period of time, Detective Johns gave petitioner the charging document listing the penalty to which petitioner was subjected as "DEATH." Officer Reese initiated communication with petitioner when he said to him, "I bet you want to talk now, huh!" Whether the remark made by Officer Reese was the functional equivalent of interrogation depends in part on whether the officer's comment was directed towards petitioner and was reasonably likely to elicit a response.

It is undisputed that Officer Reese's comment was directed towards petitioner. The remaining question is whether the comment was reasonably likely to elicit a response. Officer Reese made his comment to petitioner when Detective Johns gave petitioner the charging document advising him that he was subject to the death penalty; any reasonable officer had to know that his comment was reasonably likely to elicit an incriminating response. When the charging document was given to petitioner, containing a false statement of the law with respect to the penalty of death, it was accompanied by an officer's statement which served no legitimate purpose other than to encourage petitioner to speak. Detective Johns's reaction supports this conclusion. *See United States v. Cooper,* 19 F.3d 1154, 1162 (7th Cir.1994) (stating that "[w]here an objective observer would believe that the encounter was reasonably likely to elicit an incriminating response from the defendant, the court will find that the encounter constituted the 'functional equivalent' of interrogation," citing *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689, 64 L.Ed.2d at 308).

We reject the State's characterization offered at oral argument that the officer's statement was merely a rhetorical question. The officer's statement to petitioner could only be

interpreted as designed to induce petitioner to talk and it was improper. This statement was the functional equivalent of interrogation, and it was custodial interrogation. Actions taken by the police that the police should know are reasonably likely to elicit an incriminating response from a suspect amount to the functional equivalent of interrogation.

Merely presenting an accused with a charging document, without more, is not the functional equivalent of interrogation. In Maryland, when a defendant is arrested without a warrant, a copy of the charging document must be served on the defendant promptly after it is filed. Md. Rule 4–212(f). *See White,* 374 Md. at 250–51, 821 A.2d at 469–70; *State v. Conover,* 312 Md. 33, 42, 537 A.2d 1167, 1171 (1988). In the instant case, the officers' conduct does not fall into the category of fulfilling a legal duty and merely serving a charging document upon a defendant. Instead, we have an interrogatory type statement by an officer concomitant with the serving of a document containing the most egregious misstatement as to the penalty for the offense.

The State argues that even if Officer Reese's statement was interrogation, the detective told petitioner that they could not talk to him, and it was petitioner who reinitiated interrogation, and then knowingly and intelligently waived his *Miranda* rights. The State maintains that if the suspect reinitiates contact with the police, and then waives his rights, police questioning may then commence.

Relying on *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the State argues that petitioner's question, "Can I still talk to you?", is strong evidence that petitioner initiated the further contact with the police. The State points out that Blake reinitiated contact with the police only after reading the charges, the evidence to support those charges, and specifically, after reading what Terrence Tolbert had to say.

The law is clear that a suspect may validly waive *Miranda* rights, but once the right to counsel has been

invoked, additional safeguards are necessary. The Supreme Court pointed out in *Edwards* as follows:

"[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that *an accused, such as [the defendant], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.*"

451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386 (emphasis added) (footnote omitted). In *Bradshaw,* the Court found that the accused in fact initiated the conversation and that there was no violation of the *Edwards* rule. 462 U.S. at 1045–46, 103 S.Ct. at 2835, 77 L.Ed.2d at 412–13. In assessing whether the accused initiated the interrogation, the Court observed that the accused's question, "Well, what is going to happen to me now?", although ambiguous, was, "in the ordinary dictionary sense of that word," initiation. *Id.* at 1045, 103 S.Ct. at 2835, 77 L.Ed.2d at 412. Nonetheless, the Court stated:

"While we doubt that it would be desirable to build a superstructure of legal refinements around the word 'initiate' in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in *Edwards.*

**238**

Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship. It could reasonably have been interpreted by the officer as relating generally to the investigation. That the police officer so understood it is apparent from the fact that he immediately reminded the accused that "[y]ou do not have to talk to me," and only after the accused told him that he "understood' did they have a generalized conversation. On these facts we believe that there was not a violation of the *Edwards* rule."
*Id.* at 1045–46, 103 S.Ct. at 2835, 77 L.Ed.2d at 412–13 (citation omitted). One court concluded that "initiation" by a defendant "occurs when the defendant evinces 'a willingness and a desire for a generalized discussion about the investigation.'" *Holman v. Kemna,* 212 F.3d 413, 417 (8th Cir.2000) (quoting *Bradshaw,* 462 U.S. at 1045–46, 103 S.Ct. at 2835, 77 L.Ed.2d at 412).

In finding that petitioner's question was "in direct response to" Officer Reese's coercive statement, Judge North found that the police reinitiated the contact. The court also found that petitioner "initiated a conversation with [Detective] Johns after he [was] interrogated without counsel twenty-eight minutes earlier." Whether the ultimate issue of "initiation" under *Edwards* is a factual issue requiring a deferential standard of review, *see United States v. Gomez,* 927 F.2d 1530, 1539 n. 9 (11th Cir.1991) (stating that the finding of "initiation" under *Edwards* is considered a factual issue, citing *Fike v. James,* 833 F.2d 1503 (11th Cir.1987)), or a question of law requiring *de novo* review, *see Holman,* 212 F.3d at 417 (holding that issue is legal one requiring *de novo* review, citing *Bannister v. Delo,* 100 F.3d 610, 620 n. 9 (8th Cir.1996); *United States v. Whaley* 13 F.3d 963, 968 (6th Cir.1994)), under either standard of review, we agree with the conclusion of the Circuit Court.

We agree with Judge North that petitioner did not initiate further contact with the police and that the police violated the *Edwards* rule. Although petitioner's question to Detective

Johns, "I can still talk to you?" might be considered an "initiation" of contact with the officers in the "dictionary sense" of the word as used in *Bradshaw*, it could hardly be said that, under the circumstances, petitioner initiated the contact as that term is contemplated in the legal sense. Petitioner had requested counsel; he had been given a document that told him he was subject to the death penalty, when legally he was not; he was seventeen years of age; he had not consulted with counsel; he was in a cold holding cell with little clothing; an officer had suggested in a confrontational tone that petitioner might want to talk; and the misstatement as to the potential penalty as one of "DEATH" had never been corrected. There was no break in custody or adequate lapse in time sufficient to vitiate the coercive effect of the impermissive interrogation. *See Dunkins v. Thigpen*, 854 F.2d 394, 397 (11th Cir.1988) (holding that break in custody after invocation of Fifth Amendment rights ends the need for the *Edwards* rule); *United States v. Walker*, 624 F.Supp. 103, 105 (D.Md. 1985) (holding that following defendant's invocation of his *Miranda* rights, delay of approximately one hour not sufficient to constitute waiver of right to have counsel present before he made any statement).

We reject the State's argument that, even if Officer Reese interrogated petitioner in violation of *Miranda* and *Edwards*, Detective Johns somehow cured the violation by declaring in a loud voice: "No, he doesn't want to talk to us. He already asked for a lawyer. We cannot talk to him now." Judge North's conclusion that Detective Johns's remarks did not negate the prior unlawful interrogation by Officer Reese was not clearly erroneous. The delay of twenty-eight minutes before petitioner asked if he could talk to the officers is insufficient to constitute a waiver of his right to have counsel present before he made any statement. The break in time from Officer Reese's improper interrogation to petitioner's inquiry was very short, indicating that the latter was a continuation of the former.

The record supports the Circuit Court's finding that petitioner's question was in direct response to Officer Reese's

unlawful interrogation and was the product of impermissive interrogation. Under these circumstances, we conclude that petitioner did not "initiate" conversation with the police.

The United States Court of Appeals for the Eleventh Circuit, in *United States v. Gomez,* 927 F.2d 1530 (11th Cir.1991), addressed a similar issue. After Gomez had indicated that he wished to speak with his attorney, DEA agents stated that Gomez should consider cooperating with the government because he faced a possible life sentence and a minimum sentence of ten years. When Gomez asked an agent what he was charged with, he received incorrect information that he was charged with possession of ten kilograms of cocaine. Gomez then expressed his desire to cooperate, was re-advised of his *Miranda* rights, and made incriminating statements. The court held that the agents' comments about the possible benefits of cooperating constituted further interrogation. *Id.* at 1538. The court further noted that, once the police violate *Edwards,* it does not make sense to say that an accused can thereafter "initiate" conversation with the police unless a substantial amount of time has elapsed such that "the coercive effect of the interrogation will have subsided." *Id.* at 1539 n. 8. Although the accused technically may begin a conversation with the police, if this occurs after the police have interrogated the accused in violation of *Edwards,* the voluntariness of such "initiation" is suspect and statements subsequently obtained are inadmissible. *Id.* at 1539. The court noted that *"Edwards* would be rendered meaningless if agents were permitted to continue interrogation after the request for counsel, and then claim that the consequent response by the accused represented initiation and permitted a waiver of the asserted counsel right." *Id.*

We hold that all statements made by petitioner after he invoked his *Miranda* rights are inadmissible and the motion to suppress the statements was properly granted.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT*

*OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUN-TY AND TO REMAND CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH MARYLAND CODE (1973, 2002 REPL. VOL., 2003 CUM. SUPP.) § 12–302(c)(3)(iv) OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.*