943 A.2d 696

**Maurice Darryl PRIOLEAU**

v.

**STATE of Maryland.**

No. 2669, Sept. Term, 2005.

Court of Special Appeals of Maryland.

March 6, 2008.

20

David P. Kennedy (Nancy S. Forster, Public Defender on the brief), Baltimore, for Appellant.

Diane E. Keller (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellee.

Panel: KRAUSER, C.J., HOLLANDER, BARBERA, JJ.

BARBERA, Judge.

We consider in this appeal whether the phrase "What's up, Maurice?," when uttered by a police officer to an arrestee, is interrogation or its functional equivalent as those terms are understood in the parlance of *Miranda v. Arizona,* 384 U.S.

436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny. For the reasons that follow, we hold that words "What's up, Maurice?" were merely a greeting, given the circumstances in which they were spoken. The officer's words did not constitute formal interrogation, nor were they spoken under circumstances that the officer should have known were reasonably likely to elicit an incriminating response from the arrestee. The arrestee's statement that came on the heels of the officer's greeting was therefore not the product of custodial interrogation.

The case has its genesis in charges brought against Maurice Darryl Prioleau, appellant, alleging his involvement in an operation to distribute cocaine on the streets of Baltimore City. Appellant, having been found guilty of the crimes of conspiracy to distribute cocaine and related offenses, presents two issues for our review: (1) whether the motion court erred in denying the motion to suppress the statement; and (2) whether the evidence is sufficient to sustain the convictions. For the reasons that follow, we affirm the judgments.

## FACTS AND PROCEEDINGS

### The Motion to Suppress

The hearing held on appellant's motion to suppress his statement to the police produced the following evidence. On March 28, 2005, Baltimore City Police Detective Timothy Stach and his partner Officer Jenkins were conducting a covert surveillance of the 1600 block of Regester Street. Det. Stach testified that, at about 6:00 p.m., he observed an Acura automobile pull to the curb. An individual, whom the detective recognized as Maurice Prioleau, appellant, got out of the Acura and jogged to 1614 Regester Street.

Det. Stach watched as appellant took out a clear plastic bag and tossed it onto the front steps of the house at that address. Det. Stach was using 10 by 50 binoculars at the time and could see small vials inside the plastic bag. The detective opined at the hearing as an expert in the packaging, distribution, and

identification of controlled dangerous substances that the bag contained cocaine.

Det. Stach saw appellant walk around the corner at the end of the block. The detective then saw a man, later identified as Keith Evans, walk up to the house at 1614 Regester Street to retrieve the bag. Det. Stach watched Evans distribute the contents of the bag to several individuals who had followed him. Those individuals walked away after the transactions. Evans continued to pace Regester Street, distributing items from the bag to individuals who approached him.

Appellant appeared and walked with Evans south on Regester Street toward Federal Street. Appellant turned onto Federal Street, while Evans continued to distribute the contents of the bag to additional individuals along Regester Street.

Det. Stach recalled that, at about 4:20 p.m.,[1] appellant returned. He entered 1610 Regester Street, and, after one minute, emerged with another bag of suspected cocaine. Appellant gave the bag to Evans, who resumed his routine of strolling back and forth on Regester Street, engaging in "hand-to-hand transactions" with individuals who approached.

Det. Stach alerted Officer D avid Crites, who was at the police station, that he believed he was witnessing "narcotics activity," and appellant and Evans were "working in tandem." Officer Crites responded to the scene, driving a marked police vehicle. Officer Crites saw Evans walking northbound toward the house at 1608 Regester Street and handing off the bag to an unknown person at that address. Officer Crites arrested Evans.

Det. Stach and Officer Jenkins emerged from their undercover observation position and joined Officer Crites. Det. Stach instructed Officer Crites to "go get [appellant]."

---

1. Det. Stach had also testified at the suppression hearing that appellant drove up at about 6:00 p.m. The time discrepancy was not addressed further.

Det. Stach then escorted Evans into the house at 1610 Regester Street. The detective testified that there were numerous torn clear plastic bags on the floor, indicating drug activity in the house.

Meanwhile, Officer Crites located appellant, arrested him, and placed him in the cruiser. Officer Crites then drove to the front of 1610 Regester Street and removed appellant from the vehicle. Appellant was reluctant to move, so Officer Crites employed a "wrist lock" and walked appellant up to the entrance of the house.

As Officer Crites appeared at the front door of 1610 Regester Street with appellant, Det. Stach was standing there. He said to appellant: "What's up, Maurice?" Appellant then said: "I'm not going in that house. I've never been in that house." Det. Stach testified that his words to appellant were "not a question on anything that has to do with illegal activity." He stated, moreover, that appellant appeared very agitated and nervous when he "blurted out" those words. Det. Stach acknowledged that appellant was under arrest by the time he was brought to the house. He was not sure whether appellant had been given his *Miranda* warnings.

Inside 1610 Regester Street, the police recovered a handgun with live rounds in it and three plastic bags containing 25 clear vials of cocaine, all of which had been stashed above the ceiling tiles. The police searched appellant incident to his arrest and recovered $210.00.

Appellant moved to suppress the statement.[2] The court denied the motion, reasoning that the "comments made by Det. Stach amounted to merely an exchange of greetings," and appellant's statement was simply a blurt not covered by *Miranda.*

---

**2.** Appellant also sought suppression of the currency found during the search of his person. The court denied that motion. Appellant does not challenge that ruling on appeal.

## The Trial

Appellant was tried on charges of distribution of cocaine, possession of cocaine with the intent to distribute, several conspiracy charges, and possession of a firearm in connection with a drug trafficking offense. Det. Stach was accepted at trial as an expert in "the area of recognition of narcotics, packaging[,] distribution and also the manner in which the organizations operate in the streets in Baltimore City specifically having to do with cocaine[.]" He testified about his knowledge of drug distribution organizations in Baltimore City. He explained that those organizations typically include a "stash location," where the majority of the drugs are housed, and involve more than one member, each of whom has a specific role in the operation.

Det. Stach also testified about his observations, by use of 10 by 50 binoculars from a covert position 80 yards away, of appellant and Evans on the 1600 block of Regester Street. Det. Stach's testimony was essentially the same as his testimony at the hearing on the motion to suppress. Det. Stach testified that he saw appellant drop a bag of what he believed to be cocaine in front of 1614 Regester Street, then go into 1610 Regester Street. Det. Stach saw Evans pick up the bag that appellant had dropped and distribute its contents to individuals who approached him. After that, appellant met Evans in front of 1610 Regester Street. Appellant went into that building and, upon exiting it, handed Evans a clear plastic bag of suspected narcotics. Evans resumed dealing. The detective testified that the police arrested appellant and Evans later that evening and recovered bags of cocaine and a loaded gun from 1610 Regester Street.

Officer Jenkins, who had conducted the surveillance with Det. Stach, testified about his observations of appellant and Evans. Because his observations were without the benefit of binoculars, his testimony was limited to describing the comings and goings of the two men.

Officer Crites also testified about appellant's arrest. He recounted that appellant became "very aggressive" when he

was removed in handcuffs from the marked cruiser in front of 1610 Regester Street. Officer Crites testified that, at that point, appellant said "I'm not going in there. I wasn't around here. You didn't see me in that house." Officer Crites used a "control technique" to force appellant's entry into the house.

After the State rested, the defense moved for a judgment of acquittal. The trial court denied the motion. The defense put on a brief case, offering the testimony of appellant's sister, and the State offered one witness in rebuttal. Defense counsel renewed the motion for judgment of acquittal, submitting on all counts. The court denied the motion.

The jury acquitted appellant of the charges of distribution of cocaine, possession of cocaine with intent to distribute, and possession of a firearm in connection with a drug trafficking offense and rendered no verdict on the charge of possession of cocaine. The jury found appellant guilty of conspiracy to distribute cocaine, conspiracy to possess cocaine with intent to distribute, and conspiracy to possess cocaine. The court imposed a single sentence of 20 years' imprisonment, the first ten of which are to be served without the possibility of parole.

## DISCUSSION

### I.

Appellant argues that the court erred in denying the motion to suppress his statement to Det. Stach. He maintains that the statement was the product of custodial interrogation that was not preceded by the warnings and waiver required by *Miranda*. The State responds that the detective's question "What's up, Maurice?" was neither interrogation nor its functional equivalent. Consequently, the State argues, appellant's statement that followed the question was a blurt, not subject to suppression. We agree with the State.

We evaluate this issue by considering only the evidence that was introduced at the suppression hearing. *Blake v. State*, 381 Md. 218, 230, 849 A.2d 410 (2004), *cert. dismissed as improvidently granted*, 546 U.S. 72, 126 S.Ct. 602, 163

L.Ed.2d 406 (2005). We view that evidence in the light most favorable to the party that prevails on the motion, in this case, the State. *See State v. Rucker*, 374 Md. 199, 207, 821 A.2d 439 (2003). We review the court's findings of fact for clear error. *Id.*

■ The Supreme Court held in *Miranda* that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S.Ct. 1602. *Miranda* warnings are required only when a suspect is in custody and subject to interrogation. *Id.*

The State does not dispute that appellant was in custody. The issue before us is therefore limited to whether Det. Stach's salutation to appellant constitutes interrogation or its functional equivalent.

■ Interrogation, for *Miranda* purposes, is not limited to "police interrogation practices that involve express questioning[.]" *Rhode Island v. Innis*, 446 U.S. 291, 298–99, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Supreme Court recognized in *Innis* that such an approach to interrogation would be inconsistent with the concern in *Miranda* about the use by law enforcement personnel of various "psychological ploys" in custodial settings. *Id.* at 299, 100 S.Ct. 1682. The Court concluded, therefore, that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300–01, 100 S.Ct. 1682. The Court explained what it meant by the "functional equivalent" of interrogation: "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. 1682 (footnotes omitted).

██ Notwithstanding that the test for determining whether statements or conduct constitutes the functional equivalent of interrogation "focuses primarily upon the perceptions of the suspect, rather than the intent of the police," *id.* at 301, 100 S.Ct. 1682, the intent of the police is not without relevance. The *Innis* Court noted that the intent of the police "may well have a bearing on whether the police should have known that their words or action were reasonably likely to evoke an incriminating response." *Id.* at 301–02 n. 7, 100 S.Ct. 1682.

Whether Det. Stach's question "What's up, Maurice?" was the functional equivalent of interrogation requires that we consider the totality of the circumstances surrounding the detective's utterance. *Fenner v. State,* 381 Md. 1, 10, 846 A.2d 1020, *cert. denied,* 543 U.S. 885, 125 S.Ct. 158, 160 L.Ed.2d 143 (2004). Appellant argues that the detective's question to him "was not merely innocent social chit-chat or a polite greeting." He insists that the question, "however informally phrased," was "reasonably likely to elicit, as it in fact did, an incriminating response."

Before we address whether appellant is correct that the detective's question was an interrogation, we note the fact that appellant's statement followed, or even perhaps responded to, Det. Stach's question is not dispositive of the legal question we must decide. The focus is not upon appellant's response, but rather upon the words or actions of the police that preceded the response. The issue, again, is whether, under the totality of the circumstances, Det. Stach should have known that his question to appellant was reasonably likely to elicit an incriminating response.

The motions court concluded that Det. Stach's words, under the circumstances, were merely a greeting. Upon our independent assessment of the record, we agree. The phrase "what's up?" is commonly used as a greeting, especially, as the State points out, among young people. At least one other jurisdiction has recognized that the phrase is generally understood as a greeting. *See Arnett v. State,* 353 Ark. 165, 122 S.W.3d 484, 488 (2003) (stating that the phrase "What's up?"

constitutes a general term of salutation, and holding that the officer's use of the phrase, under the circumstances of that case, was not interrogation or its functional equivalent); *United States v. Paredes*, 388 F.Supp.2d, 1185, 1193–94 (D.Hawai'i 2005) (holding statement admissible where there was no evidence that a simple "Okay, what's up?" by the police officer would elicit an incriminating response).

■ Det. Stach's testimony indicates that he did not intend the words he spoke to appellant to be anything other than a greeting. He testified that "What's up, Maurice?" was "not a question on anything that has to do with illegal activity." The court did not indicate that it disbelieved that testimony, and we accept it. That fact is significant because "the police surely cannot be held accountable for the unforeseeable results of their words or actions," and "the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301–02, 100 S.Ct. 1682 (footnote omitted).

The words at issue in the present case are less susceptible to being deemed the functional equivalent of interrogation than were the words and conduct analyzed by the Court of Appeals in cases raising contentions like appellant's. In *Fenner*, for example, the Court held that a District Court judge's statement to a defendant at a bail review hearing, "Is there anything you'd like to tell me about yourself, sir?" was not an interrogation within the meaning of *Miranda*. 381 Md. at 10, 846 A.2d 1020. Similarly, the Court held in *State v. Conover*, 312 Md. 33, 44–45, 537 A.2d 1167 (1988), that the officer's reading to the appellant a statement of charges and application upon which the statement of charges was based was not interrogation within the meaning of *Miranda*.

Given that the phrase "what's up" is generally understood to be a greeting, and that Det. Stach did not intend the phrase to relate to anything "illegal," we conclude that the detective's utterance of the words "what's up, Maurice" was not the functional equivalent of interrogation, under the circumstances

of this case.[3] Consequently, appellant's statement that followed on the heels of Det. Stach's greeting was not the product of interrogation but rather was volunteered by appellant. It was a classic "blurt," to which the protections of *Miranda* do not apply. *See Fenner*, 381 Md. at 10, 846 A.2d 1020; *Conover*, 312 Md. at 45, 537 A.2d 1167; *see also Conboy v. State*, 155 Md.App. 353, 373, 843 A.2d 216 (2004) (holding that a police officer's comment, remarking that a key discovered in defendant's pocket fit the ignition of a car involved in an accident, "was merely an observation made without inviting a response;" and, although the appellant "nonetheless did respond," the response was not the product of interrogation and was properly admitted into evidence at trial). The court properly denied appellant's motion to suppress his blurted statement.

## II.

■ Appellant also challenges the sufficiency of the evidence to support his convictions for conspiracy. He maintains that there "was no evidence establishing that what passed between appellant and Evans was in fact cocaine." He adds that there was insufficient evidence of a conspiratorial agreement.

The State responds that appellant preserved, at most, only the second prong of his claim. The State points out that, at the close of its case, appellant argued only the lack of evidence of a conspiratorial agreement. Further, at the end of all the evidence, appellant merely renewed the motion.

■ An appellant may not argue grounds in support of a claim of legal insufficiency unless those grounds were present-

---

**3.** Appellant does not even suggest, much less directly argue, that the fact that police forcibly brought him to the stash location where Det. Stach spoke the words at issue makes his case more like several cases in which the Court of Appeals held that police conduct did constitute interrogation or its functional equivalent. *See, e.g., Blake*, 381 Md. at 235–36, 849 A.2d 410; *Drury v. State*, 368 Md. 331, 341, 793 A.2d 567, *cert. denied*, 537 U.S. 942, 123 S.Ct. 341, 154 L.Ed.2d 249 (2002).

ed to the trial court. Md. Rule 4-324; *Cain v. State,* 162 Md.App. 366, 377–78, 875 A.2d 146, *cert. denied,* 388 Md. 673, 882 A.2d 286 (2005). Appellant did not argue at trial the lack of evidence that drugs passed between Evans and him, as part of his challenge to the conspiracy charges. Therefore, the argument is not properly before us at this juncture. Even so, both aspects of appellant's claim fail.

It is well established that when reviewing a challenge to the legal sufficiency of the evidence in a jury trial, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908 (2006). There is substantial evidence to support appellant's conspiracy convictions.

"A criminal conspiracy consists of the combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Townes v. State,* 314 Md. 71, 75, 548 A.2d 832 (1988). A conspiracy is complete at the time that the unlawful agreement is reached; there is no need for an overt act in furtherance. *Id.* Moreover, "the State is not required to offer proof of any formal arrangement; rather, a conspiracy can be inferred from the actions of the accused." *Cooper v. State,* 128 Md.App. 257, 267, 737 A.2d 613 (1999).

The jury heard the testimony of Det. Stach, who qualified as an expert in drug packaging, identification, and "the manner in which the organizations operate in the streets of Baltimore City." He testified that, through the use of binoculars, he observed appellant, approximately 40 to 50 feet away, dispose of a package that was identical to the ones later recovered from the ceiling of 1610 Regester Street, which the detective referred to as a "stash location." Det. Stach also testified to his observations of appellant going into and out of the stash location and meeting up with Evans. The detective saw, on at least one occasion, appellant hand Evans a bag of suspected

cocaine. He also watched Evans, in turn, distribute to other individuals what the detective believed to be narcotics. That evidence was sufficient to permit the jury to infer a conspiracy between appellant and Evans to distribute cocaine. It was not necessary for the State to prove that the items that passed between the two men were in fact cocaine (although the jury certainly could have inferred that fact from the evidence).

Appellant further contends that Det. Stach's testimony was implausible given that the detective made his observations at dusk during a steady drizzle. On appellate review, however, we do not weigh the evidence or judge the credibility of the witnesses, as that is the responsibility of the trier of fact. *See Bryant v. State,* 142 Md.App. 604, 622, 791 A.2d 161, *cert. denied,* 369 Md. 179, 798 A.2d 552 (2002); *accord Jones v. State,* 343 Md. 448, 465, 682 A.2d 248 (1996). The jury was free to credit the detective's testimony and be persuaded by that testimony and the remaining evidence that appellant and Evans had an agreement to engage in cocaine distribution.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**